# UNITED STATES DISTRICT COURT
for the

Southern District of Indiana

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. |
| | ) | 1:20-mj-0571 |
| KRYSTAL CHERIKA SCOTT, | ) | |
| | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date(s) of June 18, 2020 in the county of Howard in the Southern District of Indiana, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Count 1: 18 U.S.C. § 48(a)(1) | Animal Crushing |
| Count 2: 18 U.S.C. § 48(a)(2) | Creating Animal Crush Videos |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

s/Andrew D. Willmann
*Complainant's signature*

Andrew D. Willmann, Special Agent, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by telephone *(reliable electronic means)*

Date: 7/15/2020

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

City and state: Indianapolis, IN

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, Andrew D. Willmann, a Special Agent with the FBI, hereby depose and state as follows:

1.  **Affiant**: I am a Special Agent with the Federal Bureau of Investigation, and have been since June 2014. I have taken classes related to cyber-criminal activity as well as classes related to the exploitation of children. I have also investigated numerous crimes against children since being assigned to the Indianapolis Field Office. I am currently assigned to the Indianapolis Violent Crimes Against Children Task Force. I have completed five months of training at the FBI Academy in Quantico, Virginia, and attended the Dallas Crimes Against Children Conference.

2.  **Requested action**: I make this affidavit in support of a Criminal Complaint and Arrest Warrant charging KRYSTAL CHERIKA SCOTT with **Count 1: Animal Crushing**, on or about June 18, 2020, in violation of Title 18, United States Code, Section 48(a)(1); and **Count 2: Creating Animal Crush Videos,** on or about June 18, 2020, in violation of Title 18, United States Code, Section 48(a)(2).

3.  **The Preventing Animal Cruelty and Torture Act ("PACT Act")**: This investigation concerns alleged violations of Title, 18, United States Code, Section 48, which generally prohibits any person to purposely engage in animal crushing in or affecting interstate or foreign commerce or within the special maritime and territorial jurisdiction of the United States, or to knowingly create an animal crush video if the person intends or has reason to know that the animal crush video will be distributed in or using a means or facility of interstate commerce or the animal

1

crush video is distributed in or using a means or facility of interstate or foreign commerce, or to knowingly sell, market, advertise, exchange, or distribute an animal crush video in, or using a means or facility of interstate or foreign commerce.

    4.    **Definitions**: The following definitions apply to this Affidavit:

        A.    The term "animal crushing,"1 as defined in 18 U.S.C. § 48(f)(1), means actual conduct in which one or more living non-human mammals, birds, reptiles, or amphibians is purposely crushed, burned, drowned, suffocated, impaled, or otherwise subjected to serious bodily injury (as defined in section 1365 and including conduct that, if committed against a person and in the special maritime and territorial jurisdiction of the United States, would violate section 2241 or 2242).

        B.    The term "animal crush video," 18 U.S.C. § 48(f)(2), is defined as any photograph, motion-picture film, video or digital recording, or electronic image that-(A) depicts animal crushing; and (B) is obscene.

        C.    The term "euthanizing an animal," as defined in 18 U.S.C. § 48(3), as the humane destruction of an animal accomplished by a method that (A) produces rapid unconsciousness and subsequent death without evidence of pain or distress; or (B) uses anesthesia produced by an agent that causes

---

1 (1) In general.--This section does not apply with regard to any conduct, or a visual depiction of that conduct, that is--
 (A) a customary and normal veterinary, agricultural husbandry, or other animal management practice; (B) the slaughter of animals for food; (C) hunting, trapping, fishing, a sporting activity not otherwise prohibited by Federal law, predator control, or pest control; (D) medical or scientific research; (E) necessary to protect the life or property of a person; or (F) performed as part of euthanizing an animal. (2) Good-faith distribution.--This section does not apply to the good-faith distribution of an animal crush video to a law enforcement agency; or (B) a third party for the sole purpose of analysis to determine if referral to a law enforcement agency is appropriate. (3) Unintentional conduct.--This section does not apply to unintentional conduct that injures or kills an animal.

painless loss of consciousness and subsequent death.

D. **Instagram:** Instagram is an online social media platform, and a facility of interstate commerce.

5. **Information provided**: The statements in this affidavit are based in part on information provided by other law enforcement officers and my own observations. Because this affidavit is being submitted for the limited purpose of securing an arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause that to believe that KRYSTAL CHERIKA SCOTT committed the above-listed offenses.

## OVERVIEW OF SPECIFIC PROBABLE CAUSE

### Background of the Investigation

6. By way of background, beginning at least on or about May 3, 2020, and continuing until at least on or about July 8, 2020, an unidentified individual (later identified as KRYSTAL CHERIKA SCOTT ("SCOTT")), began posting images and videos over various social media platforms, including Instagram, depicting SCOTT (whose face was not shown) torturing and graphically killing cats and dogs by hanging, skinning and other means. SCOTT's conduct attracted the attention of several private citizens who, on their own accord and not at the direction of law enforcement (often referred to by law enforcement officers as "internet sleuths" or "cyber tipsters"), began using publicly available information to attempt to identify the perpetrators' true identity so that they could report her conduct to law

enforcement. Using several online platforms, such as Reddit, Instagram, and YouTube, the concerned citizens shared and collected information so that they could provide it to law enforcement and the American Society for the Prevention of Cruelty to Animals (the "ASPCA").

<u>**Cyber Tipsters Notify the Boise Police Department
About SCOTT's Activity**</u>

7. On or about June 16, 2020, the Boise, Idaho Police Department (hereinafter BPD) received reports from several cyber tipsters. The cyber tipsters advised that they were a part of an online grassroots effort dedicated to identifying and reporting individuals who video themselves engaging in acts of animal torture, and then distribute videos of those acts using social media platforms. They further advised that an unidentified individual was using Instagram to post images and videos depicting that individual killing and dismembering multiple cats and dogs. According to the cyber tipsters, the unidentified individual was sharing the images and videos with other online individuals using Instagram and on other social media platforms. At the time, the group believed that the perpetrator may reside in Idaho based on an old posting.

8. BPD opened an investigation, and reviewed some of the images and videos identified by the group. BPD further reviewed the Instagram accounts from which the images and videos were posted. According to BPD, the images and videos constituted animal crush videos as described in Title 18, United States Code, Section 48. In particular, the videos and images officers reviewed an unidentified individual

4

torturing and graphically killing multiple animals by hanging, skinning and other means. The person filming the acts did not show his or her face.

9. According to BPD, one of the Instagram accounts that had streamed the video was labeled as "SERIAL_DOG_KILLER_DUDE." Using that information, as well as the content of the postings, BPD identified other Instagram accounts believed to belong to the subject based upon naming conventions and other cypertips, and began preparing a search warrant.

### The User "real.serial.dog.killer.dude" Posts Images and a Video Depicting the Hanging and Strangulation of a Gray Kitten on June 18, 2020

10. On or about June 18, 2020, and as BPD prepared the search warrant for the Instagram accounts, the same individual used the Instagram account "real.serial.dog.killer.dude2" to share the following messages in a private group message with other Instagram users.

"I'll be killing a pregnant Siamese and a kitten later on today"2

"I'll be dispatching two cats so I'll be posting the videos"

11. On the same date, the user of "real.serial.dog.killer.dude2" shared multiple pictures of a gray kitten, a black kitten, and a Siamese cat inside a black wire cage to the participants of the group message.3

12. On or about the same date, the user of the Instagram account "real.serial.dog.killer.dude2" shared an image of a small gray kitten hanging from a

---

2 As explained in more detail below, the description of the Siamese cat is significant because Person 2 delivered a pregnant Siamese cat and kitten to SCOTT on June 18, 2020.
3 Again, and as set forth in more detail below, the pictures of the gray kitten, black kitten, and Siamese cat are significant because they match the descriptions of the cats that Person 2 delivered to SCOTT on June 18, 2020 before the images and video were posted.

ligature in front of a blue tarp above a metal bar. The kitten appears to be deceased. The picture was shared in a direct share to other Instagram users including the user of "realserialdogkillerdude34".

13. Shortly after the previous picture, the user of "real.serial.dog.killer.dude2" shared an image of what appears to be the same small gray kitten lying on the ground to the participants of the group message. The kitten appears to be deceased.

14. Again, on or about June 18, 2020, the user of the Instagram account "realserialdogkillerdude34" shared a video to multiple other Instagram users depicting the strangulation of the small gray kitten. The video is described as follows:

The video is approximately eleven seconds in length and was named by Instagram as:

> "direct_shares_3402823668417103009491281361724941298630_293768683777
> 5796315721195765891 0720".

The video shows a small gray kitten hanging from a ligature in front of a blue tarp.[4] The small kitten gasps for breath multiple times before its legs begin to hang limp. The noise of passing vehicles can be heard in the background. The user of "realserialdogkillerdude34" then made the comment, "Little shit was still alive so rehanged it" (SIC) (hereinafter, "The June 18 Strangulation Video")

15. Other participants in the group message appeared to encourage the user of "real.serial.dog.killer.dude2" and "realserialdogkillerdude34" to share additional

---

4 The presence of the metal bar is explained in paragraphs 43 and 52 below.

6

images and videos depicting the strangulation and killing of cats. Multiple users promised not to share the images and videos outside of the group chat.

16. On or about June 18, 2020, a detective with BPD contacted the FBI Resident Agency in Boise, Idaho regarding the above reports of animal cruelty being live streamed on Instagram. The FBI Resident Agency in Boise, Idaho later referred the matter to the FBI Indianapolis Field Office (see below).

**Law Enforcement Links the June 18, 2020 Strangulation Video to SCOTT's IP Address**

17. On June 19, 2020, BPD detectives obtained authority from a Magistrate Judge at the Ada County District Court in Boise, Idaho to search approximately 12 Instagram accounts associated with "SERIAL_DOG_KILLER_DUDE" including:[5]

    a. serial_dog_killer_dude

    b. serial_dog_killer_dude_1.0.0

    c. real.serial.dog.killer.dude1

    d. real.serial.dog.killer.dude2

    e. realserialdogkillerdude34

    f. serial_dog_killer_dude_1.0

18. On June 20, 2020, BPD received returns from the search warrant. According to the information provided as a result of the search, the same user likely created and operated each of the accounts listed in Paragraph 27 a-f. Indeed, each of the listed accounts were registered from the IP address of 68.38.154.35. Most

---

[5] The Search Warrant was executed on Facebook's portal (Facebook owns Instagram) thereafter, and amended and filed on June 23, 2020.

7

importantly, the same IP address, namely 68.38.154.35, was used to transmit the June 18, 2020 Strangulation Video. The FBI and Ada County Sheriff's Office reviewed the Instagram accounts.

19. The Ada County Sheriff's Office (hereinafter ACSO) assisted the FBI and BPD in ascertaining that the IP address 68.38.154.35 was operated by Comcast Cable Communications LLC and located in Kokomo, Indiana. According to a Comcast Cable Communications LLC employee, on June 7 and 17, 2020, the IP address 68.38.154.35 was registered to a Kelly Scott (SCOTT's father)6, at 2018 SOUTH 300 WEST KOKOMO, IN 46902 ("SCOTT's residence").

20. Kokomo, Indiana is the Southern District of Indiana, and under the investigative jurisdiction of the FBI Indianapolis Field Office.

21. According to ACSO, a review of the Instagram accounts set forth in Paragraph 17 a-f confirmed that an individual was using those accounts to commit acts of animal cruelty as described above.

22. Since being assigned to the investigation, I have reviewed the June 18, 2020 Strangulation Video, as well as other images and videos posted by the Instagram account listed in Paragraph 17 a-f, and based on my training and experience, as well as the definition under Title 18, United States Code, Section 48 cited above, the June 18, 2020 Strangulation Video, and other images and videos described above, meet the definition of "crushing" and an "animal crush video." I

---

6 Kelly Scott was convicted in Indiana of Child Molesting and Sexual Misconduct with a Minor on June 13, 2017 and has been incarcerated since approximately June 13, 2017.

8

have also reviewed the image and video files shared from the Instagram users "real.serial.dog.killer.dude2" and "realserialdogkillerdude34 and found them to meet the legal definition of animal crush videos.

**Person 2 Identifies SCOTT as the Person to Whom She Gave a Gray and Black Kitten, and Pregnant Siamese Cat on June 18, 2020 Immediately Before SCOTT Posted the June 18, 2020 Strangulation Video**

23. On or about June 29, 2020, FBI agents from BOISE interviewed a private citizen who was located in London, England (hereinafter Person 1). Person 1 was another internet sleuth/cyber tipster who had collected information about the true identity of the Instagram user "serial_dog_killer_dude."

24. According to their interview, Person 1 described herself as a private tipster who volunteers as a social media "flagger" for abusive material, including material that depicts individuals torturing animals. According to Person 1, on or about June 9, 2020, she became aware of a person online posting videos depicting the strangulation of dogs and cats. Disturbed by what she saw, Person 1 began to attempt to identify the person posting the pictures and videos. According to Person 1, she believed the user of accounts in Paragraph 17 a-f to be a female named Krystal Scott in Kokomo, Indiana.

25. Person 1 provided a document to the FBI that contained files and information that Person 1 had collected from the publicly available online activities of SCOTT and the Instagram accounts listed in Paragraph 17.[7]

---

[7] Neither Person 1 nor any other grassroots individual acted at the direction of law enforcement and acquired the data consensually or via publicly available records.

9

26. According to Person 1's report, she had searched online and discovered an advertisement on Facebook posted by Person 2 on or about June 17, 2020. According to Person 1, Person 2 lived in Kokomo, Indiana. According to Person 1's online research, Person 2 had posted an advertisement on Facebook attempting to find a home for a gray kitten, a pregnant Siamese cat, and a black kitten instead of taking them to a shelter. This ad was posted one day before the June 18, 2020 Strangulation Video of a gray kitten was posted. According to Person 1, Person 2 described the cats in the Facebook posting, and a Facebook user utilizing the name "Sam" or "Sammy" responded to the advertisement and offered to take the cats.

27. According to Person 1, on or about June 18, 2020, Person 2 delivered the cats to a female located at 2018 SOUTH 300 WEST KOKOMO, IN. According to Person 1's report, the female had provided the address in a direct message to Person 2 that was posted on Facebook. Person 2 described the female as having red hair which was shaved on one side.

28. As set forth below, I have since reviewed via consent Person 2's Facebook postings and confirm that they corroborate Person 1's report.

29. On or about July 8, 2020, the FBI interviewed Person 2. According to Person 2, she resides in Kokomo, Indiana. Person 2 confirmed that she had possessed a gray kitten, a pregnant Siamese cat, and a black kitten in mid-June 2020. Person 2 confirmed that on June 17, 2020, she posted an ad in Facebook asking whether someone would be interested in adopting the pets so that she didn't have to take them to the shelter. According to Person 2, the three cats were all healthy, and Person 2

gave the pets to the person who responded to the ad because that person agreed to adopt and take care of them. Person 2 included pictures of the gray kitten, the black kitten, and the pregnant Siamese cat in messages on Facebook.

30. Person 2 provided screenshots of communications with the Facebook user believed to be SCOTT. I have since reviewed them and they corroborate Person 1 and 2's accounts—namely, that Person 2 posted the ad, and a user named "Sammy Marce" offered to take care of the cats. According to Person 1, on or about June 18, 2020, Person 2 delivered the cats to a female located at 2018 SOUTH 300 WEST KOKOMO, IN 46902. According to Person 2, and as corroborated by the Facebook posts, the female had provided the address in a direct message to Person 2. Person 2 described the female as having red hair which was shaved on one side.

31. A FBI task force officer showed Person 2 a photograph from SCOTT's driver's license and Person 2 confirmed that SCOTT was the "Sammy Marce" to whom she had given the cats on June 18, 2020 for adoption around 2:40 p.m. at SCOTT's residence.

32. A query of Indiana driver's license records showed a female named **KRYSTAL CHERIKA SCOTT**, date of birth XX/XX/2001 (redacted but known to law enforcement) residing at 2018 South 300 West Kokomo, IN 46902. SCOTT's driver's license photograph showed a female with reddish-blonde hair that was shaved on one side.



33. According to Person 1's report and the Facebook postings, Person 2 delivered the cats to Scott at approximately 2:40 pm on or about June 18, 2020. As set forth above, the user of the Instagram account "real.serial.dog.killer.dude2" shared the image of the gray kitten hanging in front of a blue tarp at approximately 3:40 pm on or about June 18, 2020--- shortly after Person 2 delivered the animals to "Sam."

34. I searched Google Maps for SCOTT's residence and observed a metal frame trellis that appeared to match the metal bar shown in a picture shared by the user of "real.serial.dog.killer.dude2" in the back yard of the residence. The trellis appeared to be the object the kitten was hanged from.

12

### Previous Law Enforcement Encounters with SCOTT's and Interview of SCOTT

35. On or about May 3, 2020, officers of the Kokomo Police Department (hereinafter "KPD") responded to separate, local reports of animal cruelty by SCOTT. At the time KPD approached SCOTT, they were unaware of the details of the BPD and FBI investigation that was opened on June 16, 2020 and continued thereafter.

36. Officers interviewed SCOTT at SCOTT's Residence, and having been read her Miranda rights, she signed and Advice of Rights form. SCOTT also consented to the search and seizure of two cellular phones that SCOTT provided to the officers. SCOTT chose which phone to give the officers (they did not search SCOTT or SCOTT's residence for devices) and provided the passwords. The cellular devices remain in the custody of KPD.

37. According to the KPD report, on May 3, 2020, KPD seized multiple deceased animals and animal body parts from SCOTT's residence. After she signed the Advice of Rights form, KPD officers interviewed SCOTT, and she denied any involvement in unlawful animal killing. SCOTT claimed the deceased animals at her residence were already deceased when she received them.

38. According to KPD, they discovered two cats in SCOTT's freezer. One cat was skinned, and one had black fur. They seized the cats from the freezer. They also seized a glass jar with the legs of an unidentified animal. SCOTT claimed that the animal was given to her by a friend and was a coyote, and that the frozen cats had died naturally and were placed there post-mortem. KPD also seized a white animal facemask with an articulating jaw.

39. Officers of KPD then searched two TCL cellular telephones belonging to SCOTT and her mother, Joy Scott. The devices were turned over by SCOTT and her mother. KPD was unable to find information linking SCOTT to the alleged activities on those particular devices. KPD was investigating without knowledge of the facts known to the FBI, ACSO, and BPD at the time.

40. Shortly after being interviewed on May 3, 2020, SCOTT posted a video online saying that she had not committed the crimes that were alleged to KPD. Additionally, in a May 24, 2020 video posted to the Instagram account "dixomthedemonicfennec" SCOTT claimed to have done everything as a hoax and had not actually killed or tortured any animals. SCOTT claimed to have posted the videos and pictures to "troll" people on the internet.

41. On or about June 26, 2020, again, having no knowledge of the open BPD or FBI investigation, officers responded to another complaint made by Person 3 of animal cruelty by SCOTT. According to Person 3, the ASPCA had contacted Person 3 and advised that, based on an Instagram video, the ASPCA believed that a cat he provided to SCOTT for adoption may have been tortured. Person 3 then contacted the KPD and showed screen shots of his exchanges with SCOTT who used the name "Sam" in the exchanges. According to Person 3, Person 3 gave SCOTT pregnant cat because Person 3 believed SCOTT would care for the cat.

42. KPD Officers interviewed SCOTT again. SCOTT's mother was present. KPD officers showed SCOTT and her mother a picture of Person 3's cat and they

denied ever having the cat. Officers observed 12 cats at the residence. SCOTT's mom consented to officers seizing her cellular phone.

43. Officers did not seize any other devices or computers, nor did they search for evidence (such as the blue tarp and metal rod) of the June 18, 2020 Strangulation Video (because they were unaware of it). They also did not search for evidence of the gray kitten's body from the June 18, 2020 Strangulation Video.

### June 25, 2020 Tik-Tok Suspicious Activity Report

44. On or about June 25, 2020, the social media platform Tik-Tok submitted a suspicious activity report concerning the account labeled "garfcult." Tik-Tok is a social media platform that allows users to post videos to followers and others on the internet. Tik-Tok collects subscriber information of its users to include the type of device used to register the account. The IP address used to register the "garfcult" account was 68.38.154.35, the same IP address used to register the above-mentioned Instagram accounts, on April 27, 2020.

45. Tik-Tok claimed the user of the account was sharing videos of dead animals. The device used to register the account was labeled as SM-N970U which is a Samsung Note 10 cellular telephone. SCOTT did not turn over a Samsung Note 10 cellular telephone to KPD.

### July 8, 2020 Instagram Post Depicting Beheaded Dog

46. On or about July 8, 2020, the user of the Instagram account "realdogandcatkillerdude9" shared an image of a black and white canine head sitting on top of a wire mesh cage that resembles the cage the grey and black kittens were

shown to be held in. The head appears to have been removed from the deceased dog's body. The account used the same naming convention of SCOTT's other Instagram accounts.

## EXECUTION OF FEDERAL SEARCH WARRANTS AND INTERVIEW OF SCOTT

47. On July 10, 2020, I obtained authority to search the person of KRYSTAL CHERIKA SCOTT, seize devices collected by KPD, and search SCOTT"s residence and vehicles located at 2018 SOUTH 300 WEST KOKOMO, IN 46902.

48. On July 14, 2020, Special Agents of the FBI and other law enforcement officers executed the warrants. During the search, the FBI recovered numerous animal parts and skulls that were consistent with the size of cats and dogs. Agents also discovered approximately three live dogs, twelve live cats, and several lizards. Agents seized the blue tarp and black wire cage, and observed and photographed the metal trellis described in Paragraphs 12, 14, and 34 above, and depicted in the images and video described above including the June 18, 2020 Strangulation Video.

49. The scenes depicted in the images and videos described in this Affidavit match the inside and outside of SCOTT's residence.

50. During the July 14, 2020 search of SCOTT's residence, after being advised of her rights and the identity of the interviewing agents, SCOTT agreed to speak to agents, and waived her rights orally and in writing. During the interview, SCOTT admitted to be the user of the Instagram account described in this Affidavit, including the Instagram account used the post the June 18, 2020 Strangulation Video.

51. According to SCOTT, she created and uploaded the June 18, 2020 Strangulation Video for the purpose of uploading to Instagram and sharing it with others, but does not remember the cat specifically.

52. According to SCOTT, she claims that her "good side" loves cats and dogs, but that her "bad side" tells her to commit acts of animal cruelty including killing animals by strangulation and other means. SCOTT admitted to intentionally using aliases in her online social media accounts, and avoiding showing her face or otherwise reveal her identity in the images and videos to thwart law enforcement's efforts to identify her. SCOTT further admitted to purposefully giving KPD a cellular phone that she knew would have no evidentiary value to avoid detection. SCOTT further admitting to attempting to hide the cellular phone she admits to using to upload images and videos of animal crushing under a dresser when she saw FBI arrive at her residence. SCOTT told officers that her mother did not participate in acts of animal crushing or posting animal crushing videos.

53. According to SCOTT, she used the cell phone that she hid under her dresser to produce and distribute animal crushing videos, but said that she intentionally deleted the animal crushing images and videos after they were posted. FBI recovered and seized SCOTT"s cellular phone, and agents are in the process of conducting a full forensic analysis of the phone.

54. **Interstate or foreign commerce**: The devices used to produce and store the videos were manufactured outside of the State of Indiana or contain parts that were manufactured outside of the State of Indiana, and therefore, travelled in

interstate or foreign commerce. Instagram is a company located outside the State of Indiana.

55. **Conclusion**: Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that KRYSTAL CHERIKA SCOTT has committed the listed offenses, namely animal crushing, and creating an animal crush video, in violation of Title 18, United States Code, Sections 48(a)(1) and (2).

s/Andrew D. Willmann

Andrew D. Willmann
Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of
Fed. Crim. P. 4.1 by telephone.

Date: 7/15/2020

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

18